Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ruben Castillo | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 1835 | **DATE** | 7/26/2000 |
| **CASE TITLE** | Thomas M. Hupp vs. Experian Corporation, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Defendants motion to dismiss [7-1] is granted in part and denied in part. Defendants Metromail Corporation, Metromail Information Solutions, Experian and Patricia Dever are hereby dismissed from the case. Metromail Corporation Special Severance Plan's motion to dismiss is denied in its entirety.

(11) ☐ [For further detail see order (on reverse side of/attached to) the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | JUL 27 2000 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | docketing deputy initials | 14 |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | | |
| | | | date mailed notice | |
| RO | courtroom deputy's initials | | | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Thomas M. Hupp, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 00 C 1835 |
| ) | |
| Experian Corporation,[1] ) | Honorable Ruben Castillo |
| Experian Information Solutions, Inc., ) | |
| Metromail Corporation, the Metromail ) | |
| Corporation Special Severance Plan, and ) | |
| Patricia D. Dever, as the Plan Administrator, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Thomas M. Hupp has filed a one-count complaint against his former employers, Experian Corporation,[1] Experian Information Solutions, Inc., Metromail Corporation, the Metromail Corporation Special Severance Plan, and Patricia D. Dever, as the Plan Administrator,[2] pursuant to Section 502(a)(1)(B) of the Employment Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a)(1)(B). Specifically, Hupp seeks severance benefits that he

---

[1] A question arises as to the existence of the named defendant "Experian Corporation." For the purposes of this motion, we will refer to Experian Corporation and Experian Information Solutions, Inc. generically as "Experian," particularly since the difference in corporate identity makes no difference to the outcome of this case. *See, e.g., Ameritech Benefit Plan Comm. v. Communication Workers of Am.*, Nos. 98-3096, 98-3101 and 98-3102, 2000 WL 988125, at *1 (7th Cir. July 13, 2000).

[2] Defendants contend that Patricia Dever is actually not the Plan Administrator. The Metromail Corporation Special Severance Plan refers to the Human Resources Committee of the Board of Directors as the "Plan Administrator." (R. 1, Pl.'s Compl., Ex. A, Special Severance Plan § 1.15.) Patricia Dever's title, as of February 18, 2000, is Senior Vice President, Human Resources Management & Development. (R. 1, Pl.'s Compl., Ex. D, Dever Letter 2/18/00.) Defendants thus appear to be correct, but the difference in title is irrelevant for the purposes of this motion.

14

claims are due him under the Metromail Corporation Special Severance Plan ("the Plan"), but that were denied him by the administrators of the Plan. Defendants have filed a motion to dismiss Hupp's complaint for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). For the reasons set forth below, the motion is granted in part and denied in part.

# I. RELEVANT FACTS

Thomas Hupp was an officer of Metromail Corporation, an information services company, beginning in May 1997. Metromail adopted its Special Severance Plan in July 1997 with the stated purpose of retaining valued employees by providing them with economic security in "the event of a Severance of employment." (R. 1, Pl.'s Compl., Ex. A, Special Severance Plan, Preamble.) Section 1.19 of the Plan defines "Severance" in part as the termination of an employee for "Good Reason" within two years following a "Change in Control." Termination of employment for "Good Reason" is defined as "a Change in the Employee's duties or responsibilities in the nature of a demotion (other than for cause or other than a voluntary change)." (*Id.*, Ex. A, Special Severance Plan § 1.19.)

In April 1998, a change in control occurred as Experian acquired Metromail. Pursuant to the terms of the acquisition and Section 5.7 of the Plan itself, Experian assumed Metromail's obligations under the Plan. Hupp's position at Metromail before Experian's acquisition was Vice President of Operations and Technology of On-Line Services, with responsibility for three product lines: NDA, ICS, and MEC. Each of the three product lines included eight sub-categories of operations over which Hupp had control. After the acquisition, the ICS and MEC product lines were removed from Hupp's purview, and three of the sub-categories were eliminated from the remaining NDA product line. As further illustration of Hupp's changed circumstances post-acquisition, his title changed to Vice President of Operations and Technology

2

of NDA; his budgeted headcount was reduced from 65-70 to 30; and the remaining product line, NDA, generated $15.6 million annually, down from the $33.6 million that was generated annually from the three product lines combined. (*Id.* at ¶¶ 14-18.)

Hupp claims that the above changes in his employment situation constituted a "demotion" in his employment pursuant to the Plan, entitling him to severance benefits. On September 3, 1999, believing that the sale of the remaining NDA line was imminent, Hupp notified Experian by e-mail that he deemed his employment severed for "Good Reason," effective on his last day of employment, September 17. Hupp made it clear that he expected his severance benefits, *i.e.*, one year's salary, to be paid fully as a lump sum on or about that date. On September 15, Hupp was informed by a letter from Patricia Dever that the Plan's Claims Committee ("the Committee") had denied Hupp's claim for severance benefits, and on October 19, Hupp appealed the denial. Four months later, on February 18, 2000, the Committee denied Hupp's appeal, and as a result, Hupp instituted the present action.

Defendants seek dismissal of the complaint for failure to state a claim because Hupp is not a "severed employee" and he cannot prove that the actions of the Plan Administrator were arbitrary and capricious. Specifically, Defendants argue that Hupp voluntarily resigned from his position; he was not demoted; and he voluntarily accepted all changes in job duties and responsibilities. Additionally, Defendants argue that the Plan is the only appropriate defendant and that Experian, Metromail, and Patricia Dever should be dismissed from the present suit. We grant the motion to dismiss Experian, Metromail, and Patricia Dever as defendants, but deny the motion to dismiss the complaint in its entirety against the remaining defendant, the Metromail Corporation Special Severance Plan.

## II. ANALYSIS

### A. Standard of Review

The purpose of a motion to dismiss is to test the sufficiency of the complaint and not the merits of the suit. *Weiler v. Household Fin. Corp.*, 101 F.3d 519, 524 n.1 (7th Cir. 1996). In examining a defendants' motion to dismiss, the Court must accept as true the factual allegations in the plaintiff's complaint and draw all reasonable inferences in his favor. *Fredrick v. Simmons Airlines, Inc.*, 144 F.3d 500, 502 (7th Cir. 1998). Any ambiguities are likewise resolved in the plaintiff's favor. *Dawson v. General Motors Corp.*, 977 F.2d 369, 372 (7th Cir. 1992). A complaint should be dismissed only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *Doherty v. City of Chicago*, 75 F.3d 318, 322 (7th Cir. 1996).

### B. Dismissal of Three Defendants

We first examine Defendants' assertions that Experian, Metromail, and Patricia Dever should be dismissed from the present action, and that the Plan is the only appropriate defendant. The Seventh Circuit has held that the only proper party defendant on a claim to recover benefits under ERISA § 502(a)(1)(B) is the ERISA plan itself. *Jass v. Prudential Health Care Plan, Inc.*, 88 F.3d 1482, 1490 (7th Cir. 1996). Hupp admits that the precedent is such, yet claims that "it is unclear" whether the Plan was ever incorporated or otherwise given status allowing it to be named as a party defendant. (R. 12, Pl.'s Resp. at 15). Moreover, Hupp claims that there is no distinction made between the Plan and either Experian or Metromail in the correspondence between Hupp and the Plan administrators, and that he was instructed to direct his appeal to Patricia Dever at Experian Information Solutions. (*Id.*)

4

First, Hupp's assertion that it is unclear whether the Plan can be named as a party defendant is undermined by the very fact that Hupp has already named the Plan as a defendant. *See, e.g., Fortmann v. Avon Prods., Inc.*, No. 97 C 5286, 1999 WL 160258, at *4 (N.D. Ill. Mar. 9, 1999). Second, the Plan defines itself as the "Metromail Corporation Special Severance Plan," an entity separate from the "Company," which is defined as the "Metromail Corporation or any successors thereto." (R. 1, Pl.'s Compl., Ex. A, Special Severance Plan §§ 1.5, 1.14.) Third, the fact that Hupp corresponded with Experian regarding his benefits under the Plan is not sufficient to demonstrate a connection between the Plan and Experian, Metromail, or Patricia Dever. *See Anderson v. Illinois Bell Tel. Co.*, 961 F. Supp. 1208, 1212 (N.D. Ill.1997) (allegations that company maintained plan and that correspondence regarding benefits was on company stationery were not sufficient to warrant naming the company as party defendant).

Finally, Hupp cites *Riordan v. Commonwealth Edison Co.*, 128 F.3d 549, 551 (7th Cir. 1997), to demonstrate that, while *Jass* is controlling precedent, there is case law holding that an employer is not necessarily an improper defendant. (R. 12, Pl.'s Resp. at 15 n.8). A closer reading of *Riordan*, however, makes it clear that it cannot support Hupp's argument. Although the *Riordan* court raised the possibility that a company could be a proper ERISA defendant, it explicitly declined to rule on the issue because it was waived. *Riordan*, 128 F.3d at 551 (7th Cir. 1997). Furthermore, other courts that have recognized the issue hold that naming a company is appropriate only when it and the plan are "one and the same." *See, e.g. Anderson*, 961 F. Supp. at 1212. We therefore rule that the only proper defendant is the Plan. Defendants Experian, Metromail, and Patricia Dever are dismissed from this case.

5

## C. Hupp Has Standing to Assert a Claim

### 1. Standing Under the Plan

Defendants argue that Hupp does not have standing to bring a case under the Plan because he was not a severed employee as defined by the Plan. Specifically, the defendants argue that Hupp does not qualify as a "severed employee" because his actual "severance," as defined by the Plan, did not occur on the date that Hupp told them would be his severance date. Defendants assert that this fact demonstrates Hupp's lack of standing. Section 1.20 of the Plan, however, simply states that the "Severance Date" is "any date after the Effective Date [January 1, 1997] on which an employee incurs a Severance." (R. 1, Pl.'s Compl., Ex. A, Special Severance Plan § 1.20.) There is no mention there, or anywhere that Defendants point to, that an employee must cite a specific severance date and that the severance must have actually occurred on that date. In addition, § 1.19 instructs that severance means termination of employment "within two years following a Change in Control," and there is no condition requiring an employee to specifically cite a date on which the severance occurred.

In this case, Hupp gives no specific date when the severance occurred. Instead, he alleges that the purported severance took place over a period of time and in the form of an evolution in his responsibilities. Hupp was not obligated to name a specific date of severance under the terms of the Plan, so long as his resignation occurred within the mandated two years after the "Change in Control." We therefore find that Hupp has standing under the provisions of the Plan.

### 2. Standing Under ERISA

To establish his claim under ERISA § 1132(a)(1)(B), Hupp must demonstrate that he has standing as a "participant" within the meaning of the statute. *Jackson v. E.J. Brach Corp.*, 176 F.3d 971, 978 (7th Cir. 1999). "Participant" includes employees or former employees "who have

6

a colorable claim to vested benefits." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 117-18 (1989); *Jackson*, 176 F.3d at 978. To establish a "colorable claim," Hupp would have to show that his claim is "not frivolous" and that it is for "vested benefits." *Jackson*, 176 F.3d at 979. A claim is not frivolous if it is "rooted in existing ERISA law." *Id.* To be deemed "frivolous," a claim would have to be based on a legal theory that is "so out of line with existing precedent" that it would not meet the "low threshold of the "colorable" requirement." *Panaras v. Liquid Carbonic Indus. Corp.*, 74 F.3d 786, 790 (7th Cir. 1996). As to the "vested benefits" part of the equation, standing is available to any former employee who has a colorable claim to benefits that the employer promised to pay "pursuant to the employment relationship and which a non-frivolous argument suggests have accrued to the employee's benefit." *Jackson*, 176 F.3d at 979 (quoting *Panaras*, 74 F.3d at 791).

Hupp's claim for severance benefits is not frivolous and the benefits he seeks are "vested benefits." Moreover, his claim for benefits is not out of line with existing precedent and meets the threshold of the "colorable" requirement. Like the employee in *Jackson*, Hupp makes a claim for "vested benefits" as he was promised severance benefits if he was terminated involuntarily, or in Hupp's case, if he terminated his own employment for "Good Cause." *Id.* Whether Hupp's claim of termination for "Good Cause" is valid under the Plan is a matter of contract interpretation, but for the purposes of standing, Hupp has met the applicable requirements. We therefore deny the motion to dismiss based on a lack of standing under ERISA.

**D. Failure to State a Claim**

Defendants argue that Hupp has failed to state a claim because he is not a "severed employee" and because he cannot prove that the Plan acted in an arbitrary and capricious manner. The Plan was justified in denying Hupp his benefits, according to Defendants, because

7

Hupp was not demoted, he voluntarily accepted changes in his job responsibilities, and he voluntarily resigned from his position. We find that Defendants do not show that Hupp can prove no set of facts in support of his claim that would entitle him to relief and thus deny the motion to dismiss the claim in its entirety for failure to state a claim.

### 1. Hupp is a "Severed Employee"

Defendants reiterate their argument that Hupp cannot qualify as a severed employee because he did not "incur a Severance" on the "Severance Date," which is the "predicate to benefit eligibility" under the Plan. (R. 8, Defs.' Mem. Supp. Mot. Dismiss at 10). Defendants further state that the changes in Hupp's employment responsibilities, upon which he bases his severance, occurred almost one and a half years (the date of the Experian acquisition in April 1998) prior to the September 17, 1999 that Hupp cited as his "Severance Date" in his resignation e-mail. Consequently, they argue, because there was no severance on the purported severance date, it was impossible for Hupp to qualify as a "severed employee." Defendants do not cite any Plan provision that requires an employee to cite a specific date when the severance occurred as a predicate to eligibility for severance benefits. It is undisputed that Hupp's change in employment responsibilities and subsequent resignation occurred within the mandated two-year period after a "change in control," the one clearly relevant date in question. Defendants have made no showing that, pursuant to the Plan, Hupp is disqualified as a "severed employee" because of an improper "Severance Date." We therefore deny the motion to dismiss based on a failure to state a claim based on Hupp's not being a "severed employee."

### 2. Standard of Review: Deferential or De Novo

Defendants contend that Hupp must prove that the Plan administrator acted "arbitrarily

8

and capriciously" in denying his severance benefits. (R. 8, Defs.' Mem. Supp. Mot. Dismiss at 11). Case law makes clear, however, that a challenge to a denial of benefits is to be reviewed under a *de novo* standard "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Mers v. Marriott Int'l Group Accidental Death and Dismemberment Plan*, 144 F.3d 1014, 1021 (7th Cir. 1998) (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)). Thus, we must first determine whether there is language in the Plan that "confers upon the administrator a power of discretionary judgment, so that a court can set it aside only if it was "arbitrary and capricious," that is, unreasonable, and not merely incorrect." *Herzberger v. Standard Ins. Co.*, 205 F.3d 327, 329 (7th Cir. 2000). While an ERISA plan may specify that the administrator has discretion in interpreting or applying the plan, "the conferral of discretion is not to be assumed." *Id.* at 331. The Seventh Circuit recently held that "the mere fact that a plan requires a determination of eligibility . . . or requires proof or satisfactory proof of the applicant's claim" does not give an employee sufficient notice that the plan administrator has discretionary power largely insulated from judicial review. *Id.* If an ERISA plan stipulates deferential review, the stipulation must be clear. *Id.* at 332.

In this case, § 3.1 of the Plan states that the Plan Administrator "shall have authority, subject to the provisions of the Plan, to determine who shall be eligible for Severance Pay, to interpret the Plan . . . and to make all other determinations necessary or advisable for the administration of the Plan." (R. 1, Pl.'s Compl., Ex. A, Special Severance Plan § 3.1.)[3] Section

---

[3] The pertinent provisions are §§ 3.1 and 3.2.

Section 3.1:
> "The Plan shall be interpreted, administered and operated by the Plan Administrator, who shall have the authority, subject to the

9

3.2 states that any questions of interpretation "shall be settled and determined by the Plan Administrator .... Any such settlement and determination shall be final and conclusive ...." A statement regarding the Plan's authority to "determine" an employee's eligibility for benefits "implies nothing one way or the other about the scope of judicial review." *Herzberger*, 205 F.3d at 332. Moreover, the presumption is against deference. *Wal-Mart Stores, Inc. Assoc. Health and Welfare Plan v. Wells*, 213 F.3d 398, 403 (7th Cir. 2000). However, determinations of benefits "that supervene on interpretation of key terms . . . invite the exercise of discretion, being inescapably particularistic and fact-bound." *Id.* While a plan is not required to have language specifically conferring discretionary authority on the plan administrator, the language must express with sufficient clarity that discretionary authority has been assumed by the plan. *Herzberger*, 205 F.3d at 331.

These are a few of the key points to be considered in determining the appropriate standard of review that applies in this case. At the present time, however, the proper standard to be applied has not been adequately briefed under the *Herzberger* standards. Moreover, the Court's

---

provisions of the Plan, to determine who shall be eligible for Severance Pay, to interpret the Plan, to prescribe, amend and rescind rules and regulations relating to it, and to make all other determinations necessary or advisable for the administration of the Plan."

Section 3.2:

"All questions of any character whatsoever arising in connection with the interpretation of the Plan or its administration or operation shall be settled and determined by the Plan Administrator in an equitable and fair manner in accordance with the procedure for claims and appeals described in Section 2.4. Any such settlement and determination shall be final and conclusive, and shall bind and may be relied upon by the Employer, each of the Employees and all other parties in interest."

(R. 1, Pl.'s Compl., Ex. A, Special Severance Plan §§ 3.1-3.2.)

10

resolution of this issue does not affect the ruling on the pending motion to dismiss. Therefore, we will reserve our ruling on the appropriate standard of review until further submissions by the parties are received.

### 3. Interpretation of the Plan as a Contract

The Claims Committee initially denied Hupp's claim on September 15, 1999 based on two key determinations. The first was that he did not suffer a change in his employment responsibilities in "the nature of a demotion," and thus did not have the requisite "Good Reason" to qualify as an employee who was "severed." (R. 1, Pl.'s Compl., Ex. B, 9/15/99 Experian Mem. at 2.) Second, the Committee found that because Hupp did not have a "Good Reason" to resign, he in fact resigned voluntarily, disqualifying him from severance benefits. The Committee found that any changes in Hupp's employment were the result of "business transitions" and that his responsibilities and title remained unchanged, as did his continuing participation in all business discussions at the level of Vice President. *Id.* The Committee reiterated its determinations in denying Hupp's appeal on February 18, 2000 and added that, not only did Hupp not suffer a demotion, he voluntarily accepted his new employment situation for a year and a half before voluntarily resigning in September 1999. (R. 1, Pl.'s Compl., Ex. D, 2/18/00 Experian Mem. at 3.) To determine whether the events leading up to and including Hupp's resignation constituted "Good Reason" to resign—thus making Hupp entitled to severance benefits—the applicable aspects of the Plan must be interpreted as a contract.

An ERISA plan is a contract, and the "meaning of a contract is ordinarily decided by the court, rather than by a party to the contract, let alone the party that drafted it." *Herzberger*, 205 F.3d at 330. When interpreting a contract, the Court must determine, as a matter of law, whether the pertinent terms of the contract are "ambiguous or unambiguous." *Grun v. Pneumo Abex*

11

*Corp.*, 163 F.3d 411, 420 (7th Cir. 1998). Ambiguity exists if "a provision is subject to reasonable alternative interpretations." *Id.* Courts must, however, interpret an express term in a plan in the "ordinary and popular sense as would a person of average intelligence and experience." *Id.* (citing *Pitcher v. Principle Mut. Life Ins. Co.*, 93 F.3d 407, 411 (7th Cir. 1996)). If a court determines that the relevant provisions of a contract are unambiguous, it may not consider extrinsic evidence, but it may consider extrinsic evidence if contract provisions are ambiguous. *See id.*

Among the central issues that must be settled in this case is whether the changed employment circumstances experienced by Hupp were a demotion pursuant to the Plan. If those circumstances did not amount to a "demotion," then Hupp did not have the requisite "Good Reason" to tender his resignation; he would have, in that case, resigned voluntarily, disqualifying him from receiving severance benefits. That determination must be based primarily on the contractual interpretation of the relevant parts of the Plan, particularly what constitutes "a change in the Employee's duties or responsibilities in the nature of a demotion," as stated in §1.19. This phrase is sufficiently ambiguous to preclude us from interpreting it absent material extrinsic evidence from both Hupp and the remaining defendant, the Plan. Hupp's interpretation of the enumerated changes in his job responsibilities as in "the nature of a demotion" was a plausible one, as was the Plan's interpretation that those changes did not constitute a demotion; clearly both sides must illuminate their cases further.

It is well established that matters of contract interpretation are "particularly suited to disposition by summary judgment." *Collins v. Ralston Purina Co.*, 147 F.3d 592, 598 (7th Cir. 1998) (quotation omitted). The current procedural posture of this lawsuit does not lend itself to contractual interpretation; here, we must accept all the well-pleaded allegations made by Hupp.

Hupp's allegation that the loss of two-thirds of his earlier responsibilities constituted a demotion adequately alleges a cause of action. Both parties will be given an opportunity to conduct the necessary discovery and to submit the appropriate pleadings in the future with respect to the contract interpretation issue. The motion to dismiss the complaint for failure to state a claim must be denied.

### III. CONCLUSION

For the foregoing reasons the motion to dismiss is granted in part and denied in part. (R. 7-1.) Defendants Metromail Corporation, Metromail Information Solutions, Experian, and Patricia Dever are hereby dismissed from the case, and Metromail Corporation Special Severance Plan's motion to dismiss is denied in its entirety.

**Entered:**

*/s/ Ruben Castillo*

**Judge Ruben Castillo**
**United States District Court**

**July 26, 2000**

13